**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

JOHN WILSON,          )
      Plaintiff,      )
                    )      Civil Action No. 3:06-0346
v.                   )      Judge Nixon/Brown
                    )
JO ANNE B. BARNHART,    )
Commissioner of Social Security,  )
      Defendant.      )

To:    The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying plaintiff disability insurance benefits (DIB) prior to March 27, 2002, as provided under Title II of the Social Security Act as amended. The case is currently pending on plaintiff's motion for judgment on the administrative record. (Docket Entry No. 12). For the reasons stated below, the Magistrate Judge recommends that plaintiff's motion for judgment be DENIED, and that the decision of the Commissioner to be AFFIRMED. Further, the Magistrate Judge Recommends that Plaintiff's request for remand pursuant to Section Six of 42 U.S.C. § 405(g) be DENIED.

## I. INTRODUCTION

Plaintiff filed his application for DIB on August 23, 2002, alleging an onset of disability since February 3, 2000. (Tr. 15). Plaintiff alleged disability due to dementia, venous insufficiency, obesity, hypertension, sleep apnea, and a mini-stroke (Tr. 43, 52-54, 57-66). On or about October

1

22, 2002, Plaintiff was granted benefits, with an established onset date of disability of March 27, 2002 (Tr. 15, 41-44). Mr. Wilson disagreed with the established onset date of disability and requested an administrative hearing before an Administrative Law Judge (ALJ). (Tr. 45). This hearing was held on June 23, 2004, wherein Mr. Wilson stated that he was seeking a period of disability commencing February 3, 2000. (Tr. 15, 185, 187). On October 13, 2004, the ALJ issued a written decision finding that plaintiff was not disabled prior to March 27, 2002, his established onset date of disability. (Tr.12-21). The ALJ made the following findings:

1.     Claimant meets the disability insured requirements through September 2005.

2.     Claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.     Prior to March 27, 2002, Claimant had the following impairment or combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b); venous insufficiency of the bilateral lower extremities, obesity, hypertension, sleep apnea, and chronic pulmonary disorder.

4.     As of March 27, 2002, Claimant has the additional severe impairment of vascular dementia.

5.     Prior to March 27, 2002, Claimant's medically determinable impairments did not meet or medically equal any of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

6.     As of March 27, 2002, Claimant's medical condition met the criteria for Section 12.02 *Organic Brain Disorders*.

7.     Claimant's allegations regarding his limitations prior to March 27, 2002, are found not totally credible for the reasons set forth in the body of the decision.

8.     Prior to March 27, 2002, Claimant retained the ability to perform a limited range of light work activity, as light is defined in the regulations, with the following specific functional limitations: could lift and carry 10 pounds frequently, 20 pounds occasionally; required an alternate sit/stand option; could perform postural activities occasionally; should avoid concentrated exposure to respiratory irritants, heights/machinery, temperature extremes; and required simple job assignments with routine production and stress.

9.     Claimant was unable to perform any of his past relevant work prior to March 27, 2002 (20 CFR §§ 404.1565 and 416.965).

2

10. Claimant was classified as a closely approaching advanced aged individual at all times prior to March 27, 2002 (20 CFR §§ 404.1563 and 416.963).

11. Claimant has a high school education plus one year of college (20 CFR §§ 404.1564 and 416.964).

12. Claimant had the residual functional capacity to perform a significant range of unskilled light work prior to March 27, 2002 (20 CRF § 416.967).

13. Although Claimant's exertional limitations did not allow him to perform the full range of light work prior to March 27, 2002, using Medical-Vocational Rule 202.14 as a framework for decision-making, there were a significant number of jobs in the national economy that he could have performed. Examples of such jobs included unskilled bench work (sorter, packer, assembler, inspector) numbering 15,000 in southeastern Michigan and 30,000 in the state of Michigan.

14. Claimant was not under a "disability," as defined in the Social Security Act, at any time prior to March 27, 2002 (20 CFR §§ 404.1520(f) and 416.920(f)).

15. Claimant is disabled within the meaning of the Social Security Act from March 27, 2002, but no prior thereto, and his disability continues through the date of this decision.

(Tr. 19-20).

On January 30, 2006, Plaintiff sought review from the Appeals Council and submitted new evidence consisting of additional treatment notes from his treating physician from May 6, 1998, to September 7, 1999. (Tr. 170-184). Subsequent to the ALJ's decision, Plaintiff moved his permanent residence from Michigan to Franklin, Tennessee. (Docket Entry 1, ¶ 1). On February 13, 2006, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7), thereby rendering that decision the final decision of the Commissioner. However, the Appeals Council did make the additional evidence described above (Tr. 170-184) part of the record. (Tr. 8). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based on the record as a whole, then these findings are conclusive. Id.

## II.  REVIEW OF THE RECORD

Plaintiff is a 55-year[1] old man with a high school education and two years of college.  (Tr. 15, 188).  He has past relevant work as a real estate salesman/broker, project manager and vice president for US Homes, and as a fan salesman.  (Tr. 157, 189-192, 208, 209).

Plaintiff's medical history includes the following physical and mental impairments: vascular dementia, venous insufficiency, obesity, hypertension, sleep apnea, and a mini-stroke. (Tr. 43, 52-54, 57-66).  Plaintiffs medical records indicated that he was treated by Dr. Joseph R. Salaz for his physical impairments from July 10, 1996 to January 9, 1997.  (Tr. 15-17, 121-138).  Plaintiff's records next indicate that he was then treated from May 6, 1998 to September 7, 1999 by Dr. Frederick W. Schaerf mainly for his mental impairments[2] (Tr. 8, 172-184).  Approximately eight months later, Plaintiff's records indicate that he was treated for his physical impairments, again by Dr. Salaz on May 2, 2000, and then again from November 6, 2000, to November 27, 2000 (Tr. 15-17, 121-138).  The next indication of medical treatment is approximately twenty months later by Dr. Patrick Poole from August 8, 2002 to September 9, 2002 (Tr. 15-17, 139-149).  The extended gaps in treatment have been noted several times by the Commissioner, as the dispute regarding the appropriate onset date involves these periods of time. (Tr. 16, 18 and Docket Entry 16, Page 8,11-12).

---

[1]Plaintiff was 55 at the time of the administrative hearing.  Plaintiff's birth date is June 21, 1949.  (Tr. 15, 189).

[2]While Dr. Schaerf's treatment records were made part of the administrative record by the Appeals Council (Tr. 8), these records were not before the ALJ.  Therefore, the basis for Plaintiff's request for a Sentence Six 42 U.S.C. § 405(g) remand is for the ALJ to consider Dr. Schaerf's treatment records (Tr. 172-184).  As such, the details of these particular treatment records will be discussed in further detail in later sections of this Report and Recommendation dealing with the Plaintiff's request for remand.

Case 3:06-cv-00346   Document 18   Filed 10/04/06   Page 4 of 23 PageID #: 106

Plaintiff's records indicate that his initial treatment by Dr. Salaz in July 1996 was to control plaintiff's hypertension, for which Dr. Salaz prescribed Hyzaar and an increased dose of Procardia. (Tr. 136-137). Dr. Salaz also indicated that once plaintiff's hypertension became stable, he would begin "an aggressive diet program" to treat plaintiff's obesity. (Tr. 136). In August 1996, Dr. Salaz's records indicate that while Plaintiff is a "hard-to-control hypertensive" (Tr. 131), Plaintiff was responding to the medications without side effects and began a Phen-Fen combination for excessive weight and obesity. (Tr. 131). In September 1996, Dr. Salaz states that Plaintiff's hypertension was stable, Plaintiff was responding to the hypertension medications without side effects and Plaintiff had lost 15 pounds since his last visit. (Tr. 130). While Dr. Salaz noted decreased pulses throughout Plaintiff's extremities as well as leg/ankle swelling, the records indicate that Plaintiff maintained a full range of motion and normal sensory (Tr. 130). Dr. Salaz also added Ionamin and Pondimin to Plaintiff's weight control prescriptions as well as Advil to treat Arthritis/Osteoarthritis. (Tr. 130). The transcript appears to be incomplete, missing the first page(s) of the medical records from Plaintiff's October 18, 1996, visit. (Tr. 129). However, from the January 19, 1997, records, it appears that Plaintiff continued to do well on his hypertensive medications and had been active and losing weight. (Tr. 128). Additionally, it appears that Plaintiff was diagnosed with Chronic Obstructive Pulmonary Disease (COPD) which caused bronchospasms. (Tr. 128). Dr. Salaz also notes that Plaintiff had some limitation in his range of motion due to point tenderness over the lumbar sacral area and lower legs at the knees. (Tr. 128). Throughout the course of treatment as described above, the records indicate that Dr. Salaz did not treat Plaintiff for any mental ailments.

After this January 19, 1997, visit to Dr. Salaz, Plaintiff's records indicate that he did not see

Dr. Salaz again until May 2000. (Tr. 127, 128). However, Plaintiff began seeking psychiatric treatment from Dr. Schaerf in May of 1998 until September 7, 1999. (Tr. 172).[3] According to the Organic Mental Disorders Questionnaire completed by Dr. Schaerf on May 30, 2003, Dr. Schaerf diagnosed plaintiff has having dementia, depression, short-term and intermediate memory impairment, a change in personality, a disturbance in mood, and emotional liability and impairment in impulse control. (Tr. 167). Dr. Schaerf further states in this questionnaire that Plaintiff has had a stroke and cognitive decline, now with subcortical dementia, as well as marked restriction of daily living activities, marked difficulty maintaining social functioning including the inability to engage in any social areas, as well as constant deficiencies in concentration, persistence or pace. (Tr. 168). Additionally, Dr. Schaerf marks that Plaintiff's symptoms would interfere with his ability to maintain reliable attendance in a work setting, specifically stating that Plaintiff is "unable to work." (Tr. 169 ¶ 5). Dr. Schaerf concludes this questionnaire stating that Plaintiff had been "impaired and disabled since at least 2000." (Tr. 169).[4]

On May 2, 2000, Plaintiff was again treated by Dr. Salaz, at which time he prescribed Adalat and Prevacid. (Tr. 127). Dr. Salaz's diagnosis was much the same, noting hypertension, obesity, COPD and arthritis, as well as rhinitis/sinusitis. (Tr. 127). Records indicate that Plaintiff was to return for comprehensive test results one month later, however, it appears that Plaintiff was not treated again until November 6, 2000 (Tr. 124). At this time, Plaintiff was complaining of swollen

---

[3]As stated previously, it appears that there were no treatment records from Dr. Schaerf brought before the ALJ. Therefore, these records will be discussed in detail when dealing with the Plaintiff's request for remand under Sentence Six of 42 U.S.C. § 405(g).

[4]Dr. Schaerf's opinion, as described above, has been given less weight by the ALJ for lack of supporting documentation. (Tr. 16-17).

6

legs as well as sores on his lower legs. (Tr. 124-126). Dr. Salaz noted that the lower legs showed excoriations and early stasis ulcerations of both legs. (Tr. 124). A prescription for Keflex was given as well as refills for his hypertensive medications and an Unna boot. (Tr. 124) Dr. Salaz states that, "The patient has not been on hypertensive medication for many months now. He was counseled on the importance of staying on medication." (Tr. 124). Plaintiff was additionally placed on an 1800 calorie salt/low cholesterol diet and advised of the appropriate hygiene needed. (Tr. 124). On November 13, 2000, Dr. Salaz records that Plaintiff had severe stasis to the lower extremities as well as a limited range of motion. (Tr. 123). Additionally, Dr. Salaz noted that Plaintiff's blood pressure had dropped since his previous visit as he was now taking his hypertension medication. (Tr. 123). Dr. Salaz recommended that Plaintiff lose weight, increase activity, avoid prolonged standing on the feet, and avoid cigarette smoking. (Tr. 123). On his November 20, 2000, visit, Plaintiff was "doing better," was given refills as well as Lasix for treatment for edema, and was told to increase activity. (Tr. 122). At his last visit with Dr. Salaz on November 27, 2000, Dr. Salaz noted that Plaintiff had severe lower leg stasis ulcerations compatible with chronic stasis. (Tr. 121). Dr. Salaz also again stressed the importance of hygiene to the patient, prescribed the continued use of Plaintiff's current medications and requested a follow up visit in one month. (Tr. 121). The medical records do not indicate that Plaintiff has been treated by Dr. Salaz since this last visit. Further, Dr. Salaz records do not indicate any issues regarding Plaintiff's mental state.

On August 8, 2002, approximately twenty months after his last visit to Dr. Salaz, Plaintiff was treated by Dr. Poole for symptoms including frequent urination, insomnia, and leg edema (Tr. 143). Dr. Poole also noted that Plaintiff had been taking Adalat and Prinivil but that he was not taking either now due to the cost. (Tr. 143). Dr. Poole prescribed Lasix. (Tr. 143). On August 21,

7

2002, Dr. Poole noted that Plaintiff's legs slightly improved after the Lasix use and put Plaintiff back on Adalat, Prinivil, and also increased the Lasix dose. (Tr. 144). On September 9, 2002, Plaintiff was "looking much better" and his current prescriptions had "everything under good control." (Tr. 144). Dr. Poole also noted that the "swelling in his legs is much better as well." (Tr. 144). There is no indication that Dr. Poole treated Plaintiff at any time for any mental ailment.

To develop the record, on September 27, 2002, a consultative psychological examination of Plaintiff was conducted by Gerald S. Kirzner, Ph.D. (Tr. 153-159). In this examination, Dr. Kirzner conducted an intellectual assessment using the WAIS test, a neurocognitive assessment using the Bender Gestalt test (Tr. 155) and a personality and behavioral assessment using the MPPI-2 test. Plaintiff's GAF score was 45. (Tr. 159). Dr. Kirzner noted that Plaintiff denied significant interpersonal problems, maintained appropriate eye contact, and was able to follow instructions. (Tr. 158). However, Dr. Kirzner also noted that Plaintiff had difficulty defining words that were requested in complete sentences, required additional instruction and guidance at times to complete test items, had a slowed stream of mental activity, had a constricted thought content that was limited to questions posed, had short-term memory impairment, and would not be able to manage funds direct to him. (Tr. 158, 159). Dr. Kirzner recorded that Plaintiff's concentration, attention and abstraction abilities were all mildly compromised and Plaintiff's judgment was mildly impaired. (Tr. 158). Interpreting these results, Dr. Kirzner diagnosed Plaintiff with Vascular Dementia with Depressed Mood (DSM IV-290.4) (Tr. 158), meeting Listing 12.02 Organic Mental Disorder (Tr. 18). However, Dr. Kirzner did not estimate an onset date for Plaintiff's condition. He noted that

Plaintiff attributed his condition to ministrokes which occurred in 1996. (Tr. 157).[5]

On October 16, 2002, a State Agency medical consultant, Dr. Rom Kriauciunas, a licensed psychologist, reviewed Dr. Kirzner's results as well as all other relevant evidence in the record, and concluded that the evidence of record did not establish the presence of any disabling impairment prior to March 27, 2002. (Tr. 99). Specifically, Dr. Kriauciunas found insufficient evidence that from January 1, 2000 to March 26, 2002, Plaintiff had an Organic Mental Disorder. (Tr. 99).

On October 21, 2002, another State Agency medical consultant concluded that prior to March 27, 2002, specifically from January 1, 2000 to March 26, 2002, Plaintiff retained the ability to perform a limited range of light work activity, to include sitting six of eight hours (with normal breaks), standing/walking six of eight hours (with normal breaks), performing postural activities, and lifting ten pounds frequently. (Tr. 114). This assessment was later modified in the hypothetical posed to the VE during the hearing to allow for a sit/stand option as well as environmental restrictions, in light of Plaintiff's obesity, venous insufficiency, lower extremity pain and history of COPD. (Tr. 18, 210).

At the June 23, 2004, hearing, Plaintiff testified that he stopped working in approximately January of 2000. (Tr. 194). Plaintiff further testified that as of February 2000, he weighed 350 pounds, was having difficulty carrying on conversations (Tr. 195, 199), had bad short term memory (Tr. 195), had difficulty walking (Tr. 194-195), would get sores on his swollen legs that were constantly bleeding (Tr. 195, 196, 197), and had arthritis in his knee joints (Tr. 197). He testified that he had a limited range of activities. Specifically, Plaintiff stated that back in 2000, he could

---

[5]However, it is important to note that Plaintiff continued to work for approximately 3 years after these mini-strokes. (Tr. 157, 195, 199).

9

walk for only about 100 feet at a time before his legs would tighten up and his back and knees would hurt (Tr. 200), that he would need to consistently elevate his legs (Tr. 205-206), that he could stand for only 10 minutes at a time (Tr. 200) and that he had difficulty sitting for more than 20 minutes before changing positions (Tr. 200). As for his mental function, Plaintiff testified that it currently remained about the same as it was in 2000. (Tr. 198). However, in contrast, Plaintiff also testified that from 2000-2002, he was living alone (Tr. 201), could lift up to 50 pounds (Tr. 201), would make his own breakfast (Tr. 201), did his own laundry (Tr. 202), would drive around (Tr. 200-202), would have lunch with his stock broker to discuss his finances (Tr. 201-202), would eat out on a regular basis (Tr. 202), and would spend most of his time watching television (Tr. 201,202).

At the June 23, 2004, hearing, the vocational expert ("VE") stated that Claimant would be unable to perform any of his past work due to his restriction to unskilled work. (Tr. 211). The VE was posed a hypothetical question and asked to consider an individual of Plaintiff's age, education and work history, who retained the residual functional capacity for a limited range of light work with a sit/stand option. (Tr. 209-210). The VE stated that such an individual could perform unskilled bench work, such as a sorter, packer, assembler or inspector, number 15,000 in southeastern Michigan and 30,000 in the state of Michigan. (Tr. 210).

### III.  CONCLUSIONS OF LAW

#### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of

10

reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6ᵗʰ Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6ᵗʰ Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6ᵗʰ Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6ᵗʰ Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6ᵗʰ Cir. 1985).

## B. Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gain activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be

11

determined whether he or she suffers from one of the "listed" impairments[6] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

(4)     If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)     Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the valuation process can be carried by relying on the medical vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert (VE) testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity (RFC) for purposes of the analysis required at

---

[6]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

12

steps four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423 (d)(2)(B).

## C.  Plaintiff's Statement of Errors

Plaintiff alleges three errors in the ALJ's decision: (1) that his decision to set the established onset date as March 27, 2002, was not supported by substantial evidence; (2) that he failed to give proper weight to the opinions expressed by a treating physician; and (3) that he failed to obtain additional medical evidence in accordance with 20 C.F.R. § 404.1527(c)(3).  As a fourth statement of error, Plaintiff requests a remand pursuant to Sentence Six of 42 U.S.C. § 405(g) to consider new and material evidence, specifically Dr. Schaerf's treatment notes. (Tr. 172-184).  The undersigned does not include Dr. Schaerf's treatment notes when considering Plaintiff's first three statements of errors.  These records were not submitted to the ALJ[7] and as such, cannot be considered on judicial review except in support of Plaintiff's motion to remand under Sentence Six of 42 U.S.C. § 405(g). *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148-149 (6th Cir. 1996).

With respect to Plaintiff's first argument, one of the critical factors in the agency decision is the selection of a particular disability onset date.  Plaintiff asserts that the ALJ should have found that he was unable to work prior to the established onset date of March 27, 2002, based upon Dr. Schaerf's Questionnaire in which Dr. Schaerf stated that Plaintiff's symptoms would interfere with his ability to maintain reliable attendance in a work setting and that Plaintiff was "impaired and disabled since at least 2000."  (Tr. 169).

---

[7]As stated previously, Dr. Schaerf's treatment notes were submitted in support of an unsuccessful request for Appeals Council review.  (Tr. 22, 172-184).

In *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)(per curiam), the Sixth Circuit set forth the principles necessary to determine the onset date of disability in cases involving mental impairments. After noting the progressive nature of many mental disorders, the Sixth Circuit held that the disability onset date must be inferred from the medical evidence that describes the history and symptomatology of a claimant's disease as well the claimant's allegations and work history. *Id*. at 1122 (citing Social Security Rule 83-20); *Besaw v. Secretary of Health and Human Services*, 966 F.2d 1028, 1030 (6th Cir. 1992). In cases contesting the onset date of disability, the issue is whether there is substantial evidence in the record to support the Secretary's findings of when a claimant's disability began. *Willbanks v. Secretary of Heath & Human Servs.*, 847 F. 2d 301, 303 (6th Cir. 1988)(per curiam). The claimant must prove that he became disabled prior to the date selected by the Secretary. *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988). The Secretary is not required to refute evidence that another onset date of disability could have been chosen, *Blankenship* 874 F.2d at 1121, nor is the Secretary required to disprove any earlier onset date, as long as the Secretary's determination regarding the onset date is supported by substantial evidence. *Besaw,* 966 F.2d at 1030 (citing *Blakenship*, 874 F.2d at 1121). Therefore, in the instant case, the question is not whether Plaintiff is disabled but whether Plaintiff satisfied his burden of establishing that the date of his disability was prior to March 27, 2002. It is the Magistrate Judge's finding that Plaintiff has not met this burden and that the ALJ's established onset date is supported by substantial evidence.

It should be noted that a treating physician's statement that the claimant is "disabled" does not bind an ALJ as the definition of disability requires consideration of both medical and vocational factors. 20 C.F.R. § 404.1527(e)(1); *King v. Heckler*, 742 F.2d 968, 973 (1984). Although the

14

evidence of record shows that Plaintiff's condition progressively worsened and by the time of the consultative psychological examination conducted by Dr. Kirzner on September 27, 2002, Plaintiff was clearly disabled, substantial evidence supports the ALJ's finding that Plaintiff's impairments failed to reach the severity required for a finding of disability and did not prevent Plaintiff from performing his past relevant work on or before March 27, 2002.

Specifically, the ALJ found that Plaintiff was not disabled prior to March 27, 2002, because he could have performed other worked identified by the VE. (Tr. 210). The VE stated that Plaintiff could perform unskilled bench work, such as a sorter, packer, assembler or inspector, number 15,000 in southeastern Michigan and 30,000 in the state of Michigan. (Tr. 210).

Plaintiff seems to find particular offense with the ALJ's words "reasonable to conclude that Claimant's mental decline occurred over a period of time." (Tr. 18); (Docket Entry 12, Page 8). However, Plaintiff's mental disorder is clearly of a progressive nature that did not just suddenly render the Plaintiff legally disabled overnight. As the Plaintiff did not seek medical care for a significant periods of time during 2000-2002 and did not receive any psychiatric treatment during this period, it is necessary to infer an onset date based upon all other available evidence.

The Plaintiff also appears to dispute the amount of credibility given to his testimony at the June 23, 2004, hearing (Docket Entry 12). An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997)(citing 42 U.S.C.A. § 423 and 20 C.F.R. §404.1529(a)). Further, discounting the credibility of a claimant is appropriate to a certain degree where the ALJ finds contradictions from medical reports, claimant's other testimony, and other evidence. *Id.* In the instant case, while

15

the ALJ correctly notes that Plaintiff had large gaps in his medical treatment, the Magistrate Judge disagrees with the ALJ that this meant Plaintiff's physical and mental conditions were essentially stable during these gaps in treatment. (Tr. 18). While the Claimant may have failed to seek psychiatric treatment for his mental condition, it is a "questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blakenship*, 874 F.2d at 1124. This gap in treatment does render it necessary to infer an onset date. However, the undersigned does agree with the ALJ's reasoning that Plaintiff's mental condition was generally stable from 2000-2002 because, as indicated by Plaintiff's own testimony, he lived alone from 2000-2002 and during this time, he was able to drive an automobile on a regular basis, do his own laundry, lift 50 pounds, visit his stockbroker to discuss his investments and finances, watch television, eat out on a regular basis, and make his own breakfast. (Tr. 200-202). As such, the ALJ properly afforded the correct weight to Plaintiff's other testimony regarding his mental state from 2000-2002.

Additionally, the only medical records covering the period from 2000-2002 were those of Dr. Salaz and Dr. Poole. Neither of these physicians who examined the Plaintiff during this period indicated any severe mental impairment which would render the Plaintiff disabled prior March 27, 2002. In fact, as correctly noted by the ALJ, nowhere in their treatment records is there a diagnosis or treatment for any mental impairment. Therefore, neither Dr. Salaz nor Dr. Poole's statements demonstrate that the Plaintiff was disabled prior to his established onset date of March 27, 2002. In addition, the record included two State Agency medical consultants who opined, based on a review of the record including a consultative psychological examination of the Plaintiff, that Plaintiff was not disabled, physically or mentally, prior to March 27, 2002. (Tr. 99,114).

16

This leaves Dr. Schaerf's opinion that Plaintiff was "impaired and disabled since at least 2000." (Tr. 167), which leads to Plaintiff's second argument, i.e. that proper weight was not given to Dr. Schaerf's opinion when determining the onset date. The undersigned finds that the ALJ afforded the proper weight to Dr. Schaerf's opinion based upon the review of the entire record, and as such, the ALJ's established onset date is supported by substantial evidence.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(i)-(ii). However, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (1994). In *Young v. Secretary of H.H.S.*, 925 F.2d 146,150 (1990), the court held that the Secretary could properly reject the opinion of a treating psychiatrist not supported by medical findings in favor of the contrary opinion of a consulting psychologist based upon the results of psychological testing.

The ALJ fully considered and discussed Dr. Schaerf's responses to the Obesity and Organic Mental Disorder Questionnaires and explained the basis for affording them less than controlling weight. (Tr. 17). The ALJ noted, as the record substantiates, that the record contained no progress treating notes from Dr. Schaerf to support his opinion that Plaintiff had been "impaired and disabled since at least 2000." (Tr. 17). Further, there was nothing in the record at that time to establish the

17

length, frequency and nature of Dr. Schaerf's treating relationship.[8]  Additionally, the ALJ correctly

noted that Dr. Schaerf's opinion was not consistent with the overall evidence, including the

Plaintiff's own testimony regarding his activities during 2000-2002.  Also, neither Dr. Salaz nor Dr.

Poole, also Plaintiff's treating physicians but with clear treating relationships on the record, ever

treated Plaintiff for a mental ailment.  Further, two state agency medical consultants opined, based

on the entire record, including a consultative psychological examination of the Plaintiff, that the

Plaintiff was not disabled prior to March 27, 2002.  (Tr. 99, 114).  Based on the foregoing, the ALJ

properly afforded less weight to Dr. Schaerf's opinion.[9]

With respect to Plaintiff's third argument, the ALJ does have a basic obligation to develop

a full and fair record.  *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051-1052 (6th

Cir. 1983).  However, a claimant bears the burden of providing a complete record establishing

disability and the Secretary is not required to order consultative examinations unless they are

necessary for the ALJ to make a disability determination. 20 C.F.R. § 404.1512; *Landsaw v. Sec'y

of Health and Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  As stated previously, Plaintiff's

mental disorder is clearly of a progressive nature that did not just suddenly render the Plaintiff

legally disabled overnight.  As the Plaintiff did not seek medical care for a significant period of time

during 2000-2002 and did not receive any psychiatric treatment during this period, it is necessary

---

[8]As stated previously, it appears that there were no treatment records from Dr. Schaerf
brought before the ALJ.  Therefore, these records will be discussed in detail when dealing with
the Plaintiff's request for remand under Sentence Six of 42 U.S.C. § 405(g).

[9]The Plaintiff's remedy for seeking to substantiate Dr. Schaerf's opinion at this point is
not to argue that the ALJ did not afford Dr. Schaerf's proper weight, which the ALJ clearly did
based on the entire record.  Instead, if the Plaintiff has new material to substantiate Dr. Schaerf's
opinions, the proper procedure for Plaintiff, as he has done, is to request a remand for review of
new and material evidence, as discussed below.

to infer an onset date based upon all other available evidence. To do this, the ALJ ordered a consultative psychological examination of the Plaintiff and then developed the record even further by having two additional state medical consultants review the entire record, including the consultative examination. (Tr. 85, 99, 114). Therefore, the ALJ consulted with three separate medical advisors in a situation where the medical history of a progressive disease and onset date needed to be inferred. Further, the ALJ held an administrative hearing where the Plaintiff gave significant testimony about his activities during 2000-2002 and a VE testified. (Tr. 185-212). Additionally, the ALJ had treating records from two of Plaintiff's physicians, as well as lower extremities questionnaire, two obesity questionnaires, and an organic mental disorders questionnaire. (Tr. 121-152, 161-169). Additionally, the ALJ reviewed pain/activity questionnaires from both the Plaintiff and his mother. (Tr. 77-82). As such, the ALJ was not required to elicit additional evidence, medical or otherwise, to determine the onset date of the Plaintiff's disability as the ALJ already had an extensive medical history before him and the chosen date is supported by substantial evidence in the record. The ALJ discussed the evidence in detail to support his findings and amply explained the reasoning which supported his determination. The record does not show the Plaintiff ever requested assistance from the ALJ to secure records from Dr. Schaerf. In fact, at that time, Plaintiff had requested records from Dr. Schaerf's office and had been told none could be found (Docket Entry 12, Page 13; Exhibit 1).

With respect to Plaintiff's last argument, the court may consider new evidence which is not part of the administrative record to determine whether the case warrants remand pursuant to Section Six of 42 U.S.C. § 405(g). Remand for consideration of new and material evidence is appropriate only if the material evidence relates to the claimant's condition at the time of the administrative

proceedings and if the claimant shows good cause for failing to submit the evidence during the administrative proceedings. 42 U.S.C. § 405(g); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 149 (6th Cir. 1996); *Oliver v. Sec'y of Health and Human Servs.*, 865 F.2d 709,712 (6th Cir. 1988); *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Further, to satisfy the statutory requirement of "materiality," the proponent of the new evidence must show a "reasonable probability" that the Commissioner would have reached a different conclusion on the issue of disability if presented with the new evidence. *Willis*, 727 F.2d at 554.

The Plaintiff seeks remand for the ALJ to consider Dr. Schaerf's treatment records from May 6, 1998 through September 7, 1999. (Tr. 172-184). The Plaintiff offers as good cause an affidavit from Plaintiff's non-attorney representative, Dannelly Smith, which states that although the Dr. Schaerf's records were requested prior to the June 23, 2004, hearing, Dr. Schaerf's office indicated that they did not have copies of the requested records. (Docket Entry 12, Exhibit 1). Dannelly Smith then states that subsequent to the date of the decision of the ALJ, a request was again made to Dr. Schaerf's office stating that it was "imperative" that the medical records be found. (Docket Entry 12, Exhibit 1). Dannelly Smith concludes stating that Dr. Schaerf's office then forwarded these records to Plaintiff who promptly forward them to the Appeals Council. (Docket Entry 12, Exhibit 1). The Plaintiff offers no other explanation as to why the medical evidence he seeks to have considered on remand could not have been presented to the ALJ in the June 23, 2004, hearing, other than this affidavit. The undersigned would note that while Plaintiff's representative appears to be a non-attorney, this representative was clearly familiar with disability claims, as an employee of Disability Services, Inc., whose primary purpose is to act as advocates in social security disability

claims.[10]

It was clear, prior to the June 23, 2004, hearing, that Plaintiff's mental condition and it's onset date were going to be one of the primary focuses of the hearing, as the Plaintiff requested the hearing specifically to dispute the established onset date of Plaintiff's disability under Section 12.02 Organic Mental Disorders. (Tr. 19,45). As such, if the Plaintiff believed that there was evidence of a psychiatric condition in support of the claim of a prior onset date, the evidence should have been brought before the ALJ. There is no evidence that Plaintiff requested the ALJ's assistance in obtaining these records. Further, there is no evidence, other than Dannelly Smith's self-serving affidavit based in part on hearsay, that any attempt was made to obtain these records prior to the June 23, 2004, hearing date. Additionally, the transcript of the hearing before the ALJ clearly indicates that the Plaintiff did not seek to have the record remain open until such time as other evidence could be made part of the record. As such, nothing in the record indicates any good cause for failure to obtain medical records from Dr. Schaerf prior to the close of the proceedings before the ALJ. Absent a determination of good cause to excuse the failure to incorporate this evidence in the original hearing, the Magistrate Judge cannot recommend a remand for purposes of requiring the Secretary to consider new evidence. 42 U.S.C. § 405(g).

Even if good cause could be shown for the failure to submit Dr. Schaerf's treatment records, Plaintiff must show that a different result would be obtained. Given the ALJ's rationale behind the determined onset date, there is no reasonable probability that this new evidence would have caused

---

[10]See Tr. 11 and **www.disabilityawards.com** for further information. This company's web page states that "Your DSI representative will: explain the disability claim process, assist you with all government forms; appeal your claim at each level, work with doctors to obtain medical evidence, conduct legal and medical research, represent you at hearings, and serve your best interest at every step of the process."

the ALJ to reach a different conclusion on the issue of the appropriate onset date if these records had been brought before him. While these treatment records do clearly diagnosis Plaintiff with a mental ailment prior to March 27, 2002, Plaintiff was still employed at the time of diagnosis and throughout the majority of Dr. Schaerf's treatment. (Tr. 172-184). Additionally, Plaintiff has testified that he was employed through approximately January 2000. (Tr. 194) Records indicate that on September 7, 1999, the date of Plaintiff's last visit to Dr. Schaerf, Dr. Schaerf recorded that "..we are not discussing disability, he is looking for work." (Tr. 184). Therefore, these records do not support Dr. Schaerf's opinion that Plaintiff was "impaired and disabled since at least 2000." (Tr. 167). These records clearly indicate that Plaintiff's treatment by Dr. Schaerf ended on September 7,1999, and at that time, disability was not being considered. (Tr. 184). Dr. Schaerf did not treat Plaintiff in 2000 or at anytime after September 7, 1999. Further, given the length of the treatment, it is also clear that Plaintiff was able to continue working after the diagnosis of his mental impairment. (Tr. 172-184). This supports the ALJ's contention that it was necessary for him to infer an onset date when Plaintiff became disabled as it was clearly possible for the Plaintiff to continue working for a significant period of time after Dr. Schaef's diagnosis.

Additionally, the ALJ determined the onset date of March 27, 2002, based upon, in part, Plaintiff's own testimony regarding his daily activities in 2000-2002. (Tr. 17-18). The ALJ found the Plaintiff's testimony regarding his own mental state as less than credible given the amount of activity described by the Plaintiff during this time period. (Tr. 18). Additionally, the ALJ also based his decision on the records and opinions of Plaintiff's two other treating physicians neither of which treated Plaintiff for any mental ailment between 2000 and 2002. (Tr. 17-18). Lastly, the ALJ based his decision on the VE's report, as well as two state agency medical consultants, who all

22

found that prior to March 27, 2002, Plaintiff would have been able to work. (Tr. 18-19, 99,114, 210). As such, there is no reasonable probability that this new evidence would have caused the ALJ to reach a different conclusion.

Therefore, there is neither good cause nor materiality which warrants remand pursuant to Section Six of 42 U.S.C. § 405(g).

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED. Further, the Magistrate Judge Recommends that Plaintiff's request for remand pursuant to Section Six of 42 U.S.C. § 405(g) be DENIED.

Any party has ten (10) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have ten (10) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004 (en banc).

ENTERED this __3rd__ day of October, 2006.

/S/ Joe B. Brown
_____
JOE B. BROWN
United States Magistrate Judge

23